This morning is World Imports, In Re World Imports versus Haining Wangsheng Sofa. Mr. Berkley. Thank you, Your Honors. Kirk Berkley with the law firm of Bernstein and Berkley here on behalf of the appellants. Haining Wangsheng Sofa Company and Fujian Zhangzhou Foreign Trading Company. Your Honor, I would request two minutes for a rebuttal. Granted. Thank you. Your Honors, the fundamental question today is Congress in enacting Section 503B9 of the Bankruptcy Code, did they intend the word received to apply uniformly in all bankruptcy cases or did they intend for disparate treatment and that 503B9 and the word received is merely the beginning point, the beginning threshold for then determining other applicable law and what received would mean in each case-by-case instance. I would suggest to the Court that in fact Congress meant for the word received under 503B9 to have a federal meaning, a uniform meaning in all bankruptcy cases. Does that uniform meaning, even assuming we accept that argument, include constructive receipt or is it your position that actual possession is required? Your Honor, interestingly, there is a bankruptcy court case out of New Hampshire, the Momenta case, that suggests that either constructive receipt or actual physical possession could constitute received under 503B9. I think, Your Honor, that the better position and I think that the case law would suggest that and I would suggest to the Court that it really means actual physical possession. How do we know that? Your Honors, that instructed us to counsel to look at the Marin Oil case and, Your Honor, I think that that case is, and I would suggest to the Court, is precisely our argument. And in particular, we have to look at what was going on at the time of Marin Oil and there was, in 1978, the enactment of the Bankruptcy Code where Congress was attempting to rectify a problem where we were unsure about whether or not the reclamation standards under the Uniform Commercial Code applied in the bankruptcy context. And so in order to rectify that problem, Congress enacted Section 546C of the Bankruptcy Code. And in Marin Oil, this Court was trying to, I think even if the Court stated, fill some holes, fill some loose ends because Congress, in enacting 546C, failed to define several key terms. One of those key terms was the word receipt. And I would suggest to the Court that the single most important aspect of the opinion in Marin Oil was, in fact, footnote 9. And so I want to get right to the heart of our argument, which is that in footnote 9, this Court stated that the reliance on the UCC and the definition of receipt for determining the definition of receipt is not a matter of state law. It's not that the Court was or that Congress was looking to state law to see what that particular state in that case was defining as receipt. But instead, Congress, in enacting 546C, was borrowing that definition in Congress's enactment of Section 546C. So in other words, the definition of receipt... from which the bankruptcy code drew upon the UCC definition at the time. Am I understanding your argument? Absolutely, Your Honor. In fact, this Court even said in footnote 9 that it's not as if it's a matter of state law and it might change depending if an individual state would change its version of... So it's really not a gap-filling exercise. It's a definitional exercise. Absolutely. When we're looking to the interpretation of a term in the statute, that's simply a matter of statutory construction, right? We look to the plain language of the statute, then we look to things like the structure of it and interrelated provisions. Here, where we had 546C, there was an amendment in 2005. And in that amendment, it also created the very provision we're talking about today. Right. And it amended at the same time 546C to cross-reference 503B9. You've argued to us that we need to look to the bankruptcy code generally and consistent provisions, but hasn't Congress already directed us by cross-referencing these two provisions in the same legislation that it should have the same meaning? Absolutely, Your Honor. I think our argument starts with the first and most basic fundamental position that the word received has a plain meaning, and that means actual physical possession, both in Black's Law Dictionary and the very plain meaning of the word in Webster's Dictionary. Well, we thought some more work was necessary in Marin Motor Oil, right? But we went forward and addressed the definition of the term. So the question really is, do we look to the statute and Marin Oil, then, to answer the question that's presented here, or do we need to do, as you argued in your brief, a choice of law analysis from Forrestal, Guarneri, looking to the Pennsylvania UCC? Do we really need to go in that direction? No, we don't. I want to be clear that perhaps that was an exercise in trying to argue alternative arguments when we should have just stuck with the primary argument in our brief. My argument today is that the plain meaning of the word received has its meaning as actual physical possession. And to look at the importance of Marin Motor Oil, I believe it's to see that this Court has already also itself gone through this exercise. When the Court was struggling with the question of what does the word receipt mean, and then the Court looked at the fact that Congress, in enacting 546C, really just borrowed from the reclamation statute of the Model Uniform Commercial Code, and receipt is defined in the Uniform Commercial Code as actual physical possession. And then, in the amendments of 2005, both 503B9 and the amendments to 546C were both under the headline reclamation. In fact, 546C2 even says that if you aren't able to avail yourselves of the rights of 546C1, because you haven't sent a notice, that the claimant still has its rights under 503B9. These two statutes are absolutely, or these two sections of the bankruptcy code are absolutely tied together, enacted at the exact same time, under the headline of reclamation. Let me ask you about the receipt question, Mr. Berkeley. Here we have a common carrier when the goods were placed FOB in China, right? Correct. Instead of a common carrier, if it had been the buyer's agent, the case comes out the other way, does it not? Would you have to concede that you would lose if the goods were delivered to the buyer's agent instead of to a common carrier? If the... I believe so, Your Honor. So long as that... It's sort of an awkward way of asking if... Physical possession includes an agent of the recipient as well, right? And there's not some sort of geographical limitation that has to arrive at your warehouse, right? I think that's correct, Your Honor. And then motor oil dealt with a BLE, right? That's correct. That's correct. In fact, it was the BLE of the recipient of the goods. And in fact, if you look at the provisions of the Model Uniform Commercial Code in 705, which talk about a seller's rights to stop goods in transit, that the seller's rights to stop goods in transit actually cease upon receipt of those goods by a BLE, except for a carrier. Carriers specifically carved out of the type of entity or person that might accept those goods when those rights would then cease. So we do have... It's very important. I think this is also what Marin discussed in its holding, is that we do have a couple of very distinct rights here. The first right is when the goods are loaded FOB onto the common carrier to stop those goods in transit. Once those goods are accepted, received by the buyer, that right to stop the goods in transit ceases. And a new right arises, and that is the right of reclamation. That right was then, as we talked about, codified into the Bankruptcy Code. Your Honor, I think that this inquiry actually ends there. The definition of received under the Bankruptcy Code is completely tied together in both 546C and 503B9. But I would suggest that even if... I just want to mention that I think that even their arguments, it makes logical sense on why the court should come down the way that the appellant is suggesting to the court. The appellee spends a lot of time talking about the word delivery, because even under the CISG, there's no definition of the word receipt. And that they attempt to argue to the court that delivery actually means... receipt under the Bankruptcy Code. But even the Uniform Commercial Code talks about how distinct these concepts are. Delivery is a concept that allows a seller of goods to fulfill its contractual obligations. But receipt is a very different concept, and in fact, a very different defined term. And so I think there's actually maybe a good reason why the CISG doesn't even include a definition, doesn't include the word received. Because rights of reclamation that arise, again, once your right to stop goods in transit ceases, would have to be governed by the nation state or the subject's jurisdiction where the goods are going to arrive. So even under the CISG, the failure of the CISG to define or include the word receipt, I don't think is in any way fatal to argument. In fact, I think it supports it. That these are two very separate, distinct rights. And the Bankruptcy Code, and I would suggest to your honor that the Bankruptcy Court for the Eastern District of Virginia got it right in Circuit City too. When it talked about this exact analysis, and that 546C and 503B9 are similar, and concern related issues and related words, and should mean the same thing that this court decided in Maranoi. I have nothing further at this time, your honor. Thank you. Thank you, Mr. Berkley. Mr. Braverman? Yes, sir. May it please the court. My name is David Braverman. It's my privilege to appear before the court on behalf of World Import Entities. The UCC in this context is inconsistent with the CISG and the ENCODE terms promulgated in accordance with that treaty. Even if we agree with you that that's true. Yes, sir. Don't we need to begin by focusing on the statutory language of the Bankruptcy Code? And I'd appreciate it if you'd address Judge Krause's interaction with Mr. Berkley. Is it not significant that these two provisions regarding reclamation were adopted as part of BAPSIPA at the same time? And isn't that a clear indication to this court that we need to read those consistently with one another? Yes, your honor. I do believe that it's significant. And the significance arises out of the fact that in 546C there's an express reference to the UCC and to the cases interpreting the UCC. And that is evident in Marin Oil, which I'll explain. But 503B-9 doesn't have any reference whatsoever. And Congress, if they enacted these together, which they did, and they intended that the definitions applied in the UCC would also apply in 503C-9, then they didn't do it. And they knew how to do it. So I think it's significant from its absence. They didn't do what? They didn't make specific reference that the UCC interpretation shall control here? Correct, your honor. But is it not the case that the word receipt at the time it would receive was defined in the statute, was included in the statute, was included with reference to the then understanding of UCC? I think it's significant because they didn't do it in 503. They did do it in 546C. However, the key to this case is that this is not a domestic shipment like Marin Oil. Sure. This is an international shipment. Specific rules apply. Yeah, I think everyone agrees that if this were not a bankruptcy case, you're in CISG land, not UCC land, and your arguments are perfectly sound. But it seems to me that your argument is inviting us to allow the parties to alter the text of the bankruptcy code and what the word receive means by contract and or allowing the CISG and the INCO terms to modify the text of the bankruptcy code. Why am I incorrect in understanding that? Because I don't think we're modifying the text at all. The bankruptcy code contemplates that there could be underlying either state law or international law that would control the application of a particular section of the bankruptcy code. And here, when you look at 503 and the word received is used, and since this is an international contract, everybody agrees it's governed by the CISG, and the bankruptcy code is not intended to undercut the parties' agreements in the applicable law. It's intended to complement it. So the parties could change what the word receive means by, in their contract, saying that for purposes of this transaction, receive means when it's placed FOB on the ship in China. The answer is it probably could, but that's not the case here. Well, that's troubling because now you've got parties altering federal obligations. Because parties can't contract away the bankruptcy code. And I don't think they are in this case. I know that's not what happened here, but in order to answer the question here, I think we have to address the definitional point, and what I'm challenging you on, Mr. Braverman, is that if the parties can define as they see fit what the word receive means, and if the ENCODE terms or the CISG can define as they see fit what the word receive means, haven't we just allowed the CISG to alter federal bankruptcy law? I don't think so. The bankruptcy code is replete with instances where you need to look to state law,  and here it is plainly contemplated that if you have a contract that is governed by the CISG, the bankruptcy code must be read in the context of the CISG. And here we're talking about what does the term under the CISG received mean. And there you look to what the party's expectations were in making this contract. But the Supreme Court has told us that we don't necessarily adopt the definition from a federal statute to interpret a term in the bankruptcy code in the absence of an explicit connector. I'm sorry, Your Honor. I didn't hear the first part of your question. The Supreme Court has said that we should not be adopting a definition of a word from another federal statute to interpret a term in the bankruptcy code without some explicit connector. Precisely. Here, as to this provision, we don't have an explicit connector pointing us to an international treaty. We actually have Congress having addressed in the enacting legislation of the section that we're addressing, there's a cross-reference to a provision that had already been interpreted by federal courts, including our court, to mean physical receipt. So when Congress enacts an amendment to that section and doesn't change the receipt language that has been interpreted by the federal courts, and in the same legislation is enacting the section we're talking about using the same term, aren't we required by basic canons of statutory construction to ascribe the same meaning to that term? Under the hypothesis that Your Honor posited, perhaps. However, in this case, 503 does not refer to the UCC. Even though they were enacted at the same time. And if Congress wanted this court or the parties to rely upon the definition of received under 546C by looking to the UCC, it would have been a very easy proposition for them to have done that. Where in the amendment is a reference to the UCC? I'm sorry, Your Honor? Where in the amendment, I'm looking at section 1227 on reclamation that amended 546C. Where is there a reference to the UCC in that amendment? 546C specifically says, the holder of the security interest in such goods or the proceeds are of the rights and powers of the trustee under the avoidable power section are subject to the right of the seller of goods that has sold goods to the debtor in the ordinary course. And then the legislative history clearly refers to the UCC as does Judge Becker in the Marinoil case. You're talking about legislative history, not the text of the statute. But the text can only be read to refer to the UCC. But that just tells us that the UCC's understanding at that time of the word receive informed how federal bankruptcy law defines receive. It may so, Your Honor. However, if you look at the Marinoil case, and I think Marinoil is significant because it actually supports our position. Marinoil specifically refers to 2702. And then from there it refers to 2705. And then the definition, 2702. And then it goes to 21031C, which defines possession. And then if you go to the facts of that case, domestic shipment, FOB New York Harbor. It's unclear under that case whether or not the New Jersey terminal was in the New York Harbor. Not discussed in the case. But even if it were to be FOB New York Harbor, the case turned on the fact that the seller retained the right to stop delivery until the goods were in ultimately constructed possession, not actual physical receipt. And if one is to look at the UCC in its actual terms, which says actual physical possession, query whether or not the constructed possession that Judge Becker found in Marinoil meets that standard. He did. Your Honors did. And I think it probably does. But the significance is that under the ENCO terms, once the shipment passes the rails of the ship in China, FOB, that imaginary line, the seller loses all right to stop delivery. Is that right under Article 71 of CISG? I thought that article, like the UCC section 2705, provides the seller may stop the delivery and retrieve the goods if it becomes apparent that the other party will not perform. That's exactly what we said in Marinoil was evidence that receipt was different from delivery and passage of title. Not after the goods pass the ship rails. Delivery is complete. Under the CISG, the ENCO terms, delivery is complete. And the seller's obligations are satisfied in their entirety once the goods pass the ship's rails. They do not have the right to stop shipment. They have the right to stop shipment before they pass the ship's rails. So the inconsistency here between the CISG and the UCC would be that delivery is complete, seller's obligations are complete, yet receipt has not occurred. 2705 says that receipt is not once it's placed on the common carrier. In other words, it says, and Marinoil relied upon this, that while it was in the possession of the common carrier, delivery was not complete and delivery could be suspended. Can you help me understand how CISG works? Because the limitation that you're articulating, I don't see in Article 71. You need to look to the ENCO terms, Your Honor, and specifically to Rule A-4 entitled delivery. And through the centuries, the ship's rails have assumed an inordinate importance as an imaginary border between the seller's and the buyer's territory. Under A-4, once the seller delivers the goods by placing them on board the vessel nominated by the buyer, delivery is complete. Article 71 provides that we're not addressing delivery. We're addressing if there's a distinction between delivery and receipt. And Article 71, just like the UCC provision, says that even if the seller's already dispatched the goods, he can prevent them being handed over to the buyer if it's become apparent that the buyer can't perform. So when we found that type of provision to be relevant distinguishing delivery from receipt for 546, why doesn't that apply even looking at the terms of the CISG itself? Because I think, Your Honor, under the terms of the CISG, there is no distinction between delivery and receipt. Receipt's not a concept that's even applicable. What if there's a distinction between the CISG and the Bankruptcy Code? I think they need to be read in tandem. And under the Bankruptcy Code, 50C39 clearly uses the term receipt, which when you look to the CISG and to the INCO terms, delivery is the functional equivalent. Under what circumstances would we look to the CISG to determine a definition of receipt? I think under any contract that is governed by the CISG, because there is no body of law under the Bankruptcy Code defining receipt. So when there's a gap in those terms, you need to look to the underlying contract law. So the whole case really does come back to that. Either this is a gap-filling exercise, in which case the CISG applies, the UCC doesn't, you win, or it's a definitional exercise in which case the word receive in 503 has a static meaning under federal law, in which case you lose. I agree with you, Your Honor, and I think the former is clearly the case. This is a gap-filling exercise. All right. If Your Honor has no further questions, I appreciate the opportunity. Thank you, Mr. Berkley.  Thank you, Your Honor. I would make only one brief point, unless you have other questions about this, is that in fact certainly Congress knows how to refer to applicable law under the Bankruptcy Code, and there are many examples, but I would point you to one example, which I think is very instructive,  in fact, 502b1, which talks about such claim is enforceable against the debtor and property of the debtor under any agreement or applicable law for a reason other than because the claim is contingent or unmatured. Congress knows how to say when to refer to applicable agreements, when to refer to applicable law, and they didn't do that in 503b9 or 546c. And so I would suggest again that it does have, the word received, does certainly have a static meaning that is uniform in all bankruptcy cases. Thank you, Mr. Berkley. Thank you, Your Honor. Thank you. The Court appreciates the excellent argument and briefing.